UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


JOHN N.,[1]

                    Plaintiff,

                                                    Case No. 3:20-CV-01273-YY

            v.

                                                    OPINION AND ORDER

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.


YOU, Magistrate Judge.

        Plaintiff John N. seeks judicial review of the final decision by the Commissioner of the

Social Security Administration ("Commissioner") denying his application for Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and

Supplemental Security Income ("SSI") disability benefits under Title XVI of the Act, 42 U.S.C.

§§ 1381-1383f.  This court has jurisdiction to review the Commissioner's decision pursuant to 42

U.S.C. § 405(g) and §§ 1383(g)(3).  For the reasons set forth below, that decision is

AFFIRMED.

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of
plaintiff's last name.

Plaintiff protectively filed for DIB and SSI on October 31, 2017, alleging disability beginning on August 31, 2016.  Plaintiff's application was initially denied on February 15, 2018, and upon reconsideration on July 23, 2018.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on August 7, 2018.  At that hearing, plaintiff and a vocational expert testified.  The ALJ issued a decision on September 20, 2019, finding plaintiff not disabled within the meaning of the Act.  Tr. 13.

The Appeals Council denied plaintiff's request for review on May 29, 2020.  Tr. 1-3. Therefore, the ALJ's decision is the Commissioner's final decision and subject to review by this court.  20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'"  *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).  This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). The Commissioner bears the burden of proof at step five. *Id.* at 953-54.

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since August 31, 2016, through the end of the requested closed period of October 9, 2018. Tr. 17. At step two, the ALJ determined plaintiff suffered from the following severe impairments: major depressive disorder, social anxiety disorder, obsessive-compulsive disorder (20 CFR 404.1520(c) and 416.920(c)). Tr. 18.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 18.

The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined plaintiff could perform a full range of work at all exertional levels but with the following nonexertional limitations: simple tasks with short, simple instructions, with no public contact and occasional, superficial contact with coworkers, but no teamwork tasks. Tr. 19.

At step four, the ALJ found plaintiff was unable to perform any past relevant work. Tr. 23. However, at step five, the ALJ found that considering plaintiff's age, education, work

experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including machine packager, product assembler, and package handler.  Tr. 23-24.  Thus, the ALJ concluded plaintiff was not disabled. *Id.*

## DISCUSSION

Plaintiff contends the ALJ erred by improperly discounting his subjective symptom testimony, rejecting medical opinion testimony, and ignoring lay evidence.

## I.    Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).  A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible."  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing."  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Burch v. Barnhart*, 400 F.3d 676, 679

(9th Cir. 2005) (citation omitted).  "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  *Id.*

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see* 20 C.F.R. § 416.929(c)(2) ("we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements").

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029.  SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms.  *Id.* at *1-2.  The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."  *Id.* at *4.

SSR 16-3p explains that "[w]hen a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review."

The decision under review is dated September 20, 2019.  Tr. 25.  Therefore, SSR 16-3p applies.

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms."  Tr. 20.  However, the ALJ concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  *Id.*  Specifically, the ALJ concluded that, "[w]hile the claimant experienced some mental health symptoms throughout the time period at issue, medications and lifestyle adjustments led to a decreased intensity of symptom (Ex. lF, 2F, 9F, l0F, 12F) and the claimant never ceased looking for work for any meaningful period."  Tr. 22.

Regarding medications, the ALJ observed that plaintiff had reported paroxetine was "decreasing his fear/anxiety."  Tr. 20 (citing Tr. 456-464).  Indeed, the medical records cited by the ALJ reflect that plaintiff began taking paroxetine in mid-November 2016, Tr. 466, and by the end of November 2016, plaintiff reported the "medication is starting to help," Tr. 464, and also that it was "helping with the 'fear side of things."  Tr. 463.  In December 2016, plaintiff reported that "[h]is anxiety is getting better" and he was "able to go out with people much easier."  Tr. 460.  Treatment notes from January 2017 again indicate plaintiff "states the medication has helped with his anxiety" and symptoms "of anxiety have decreased significantly."  Tr. 457.  Plaintiff "denie[d] anxious/fearful thoughts, difficulty concentrating, difficulty falling asleep or difficulty staying asleep."  Tr. 456; *see also id.* ("The patient's relieving factors are medication

(paroxetine)."). The ALJ also relied upon a treatment record from April 2017, where plaintiff reported that "[h]is depression responded well to Zoloft and he was doing better."[2]  Tr. 323.

"Impairments that can be controlled effectively with medication are not disabling[.]" *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006). For this reason, the ALJ did not err in rejecting plaintiff's symptom testimony on this basis. *Ash v. Berryhill*, 676 F. App'x 632 (9th Cir. 2017) (affirming ALJ's credibility finding based on evidence that the plaintiff's medications had been "relatively effective" in controlling her symptoms).

The ALJ also discredited plaintiff's testimony because plaintiff "believed he was able to work and was actively seeking employment, inconsistent with his allegation of total disability." Tr. 21. In evaluating a claimant's testimony, the ALJ may consider inconsistencies between the claimant's testimony and the claimant's conduct. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

Here. the ALJ correctly observed that until August 2016, plaintiff had worked at Microsoft in a "term-limited position," Tr. 22, that "ended due to its temporary nature, not due to [his] mental health symptoms." Tr. 23. The record reflects that plaintiff had a contract position with Microsoft position as a program analyst, which was terminated due to program cuts. Tr. 344 (psychiatric evaluation from May 10, 2017, noting plaintiff "lost his job last August due to program cuts"); *see also* Tr. 308 (plaintiff worked "under contract" for Microsoft from February to August 2016); Tr. 387 (same).

The ALJ observed that plaintiff thereafter collected unemployment, "which requires that he certify he is able to work and is actively searching for a job." Tr. 22. Plaintiff in fact received

---

[2] Plaintiff stopped taking Zoloft when he started a new job because of insurance-related issues. Records indicate "he got hired and he lost insurance before the new insurance starts." Tr. 323.

unemployment benefits for six months through February 2017.  Tr. 40.  The ALJ further observed that, "[n]otably, the claimant began working with vocational rehabilitation services in approximately August of 2017, after applying for jobs related to obtaining unemployment benefits for the 4th quarter of 2016 and the first quarter of 2017."  Tr. 17.

"The receipt of unemployment benefits in Oregon is not necessarily inconsistent with the filing of an application for disability benefits under the Social Security Act." *Hardin v. Colvin*, No. 6:14-CV-01044-SB, 2015 WL 7766080, at *7 (D. Or. Nov. 4, 2015), *report and recommendation adopted,* No. 6:14-CV-1044-SB, 2015 WL 7777889 (D. Or. Dec. 2, 2015) (citing *Mulanax v. Comm'r of Soc. Sec.,* 293 F. App'x. 522, 523 (9th Cir. 2008)).[3]  However, here, the ALJ relied on the fact that plaintiff sought unemployment benefits, and pursued vocational rehabilitation services, to help illustrate that plaintiff "believed he was able to work and was actively seeking employment," which the ALJ found was "inconsistent with his allegation of total disability."  Tr. 20-21; *see Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988) (affirming denial of disability benefits where the plaintiff "received unemployment insurance benefits thereafter (apparently considering himself capable of work and holding himself out as available for work)"); *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014)

---

[3] In *Mulanax*, the Ninth Circuit observed:

> [I]n order to be eligible for disability benefits under the Social Security Act, the person must be unable to sustain full-time work[.] ... However, under Oregon law, a person is eligible for unemployment benefits if she is available for some work, including temporary and part time opportunities. Therefore, Mulanax's claim of unemployment in Oregon is not necessarily inconsistent with her claim of disability benefits under the Social Security Act.

293 F. App'x at 523.

("Continued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working.").

For further support, the ALJ cited an April 2017 psychiatric evaluation in which plaintiff reported that he was "interested to start a job as soon as possible." *Id.* (citing Tr. 322). The ALJ also cited progress notes from May 2017, where plaintiff stated he "would rather get a job soon" and "he can only afford a job in his field (business consulting), not a stopgap job[] in retail or food service that pays lower." Tr. 21 (citing Tr. 345). However, plaintiff stated he "would consider a stopgap lower paying job . . . while he looks for a job in his field." Tr. 345. The ALJ concluded all of this "show[ed] the claimant was not working due to inability to work but out of desire to obtain a job that paid him an amount he found acceptable." Tr. 21.

Moreover, although the job that plaintiff ultimately obtained at FedEx was only part-time, "[a]n ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). And, again, in evaluating a claimant's testimony, the ALJ may consider inconsistencies between the claimant's testimony and the claimant's conduct, which is what the ALJ did here. *Molina*, 674 F.3d at 1112.

In sum, the ALJ provided at least one valid clear and convincing reason to discredit plaintiff's testimony. *See Lewis v. Berryhill*, 722 F. App'x 660, 662 (9th Cir. 2018) (finding ALJ properly rejected the plaintiff's testimony based on her statement that she continued looking for work after her alleged onset date) (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010) (holding the ALJ reasonably discredited the plaintiff's testimony based on his ability to perform past work despite his impairments).

Finally, plaintiff argues the ALJ failed to comply with *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015), by merely "paraphrasing" his testimony and "fail[ing] to identify which testimony she found not credible" and not "link[ing] that testimony to the particular parts of the record supporting her non-credibility determination."  Pl. Br. 7 (citing *Brown-Hunter*, 806 F.3d at 494).  In *Brown-Hunter*, the ALJ "simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination."  806 F.3d at 494.  The Ninth Circuit held that "[t]his is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited."  *Id.*

Here, the ALJ recapped the symptoms that plaintiff described in his function report and medical records.  Tr. 20-22.  Then, the ALJ explained why plaintiff's symptom complaints were inconsistent with medical records that described improvement with medication and his actions in actively seeking employment.  There is no error based on *Brown-Hunter* here.

Plaintiff also claims the ALJ "ignored his testimony reconciling his job search during the period of disability and that which concerned the role of his impairments in his 2017 job loss."  Pl. Br. 6.  Plaintiff testified, "I wanted to believe I could work," and claimed he pursued work until a psychologist said, "you shouldn't be working right now."  Tr. 46.  Plaintiff further testified, "I kept going after employment so that I – so I'd never have to be here, in this room right now, so I'd never have to be someone disabled."  *Id.*

But even assuming *arguendo* that the ALJ erred in failing address this specific testimony, the ALJ provided another clear and convincing reason to discredit plaintiff's subjective symptom complaints.  Otherwise stated, if any error exists, it is harmless.

II.     **Medical Opinion Testimony**

Plaintiff claims the ALJ failed to provide specific and legitimate reasons for rejecting the

opinion of consultative examiner Dr. Vederman.

A.     **Relevant Law**

Plaintiff filed for benefits on November 17, 2017.  For claims filed on or after March 27,

2017, Federal Regulation 20 C.F.R. § 404.1520c governs how an ALJ must evaluate medical

opinion evidence under Title II and 20 C.F.R. § 416.920c governs under Title XVI.  *Revisions to*

*Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82 Fed. Reg. 5844,

*available at* 2017 WL 168819 (Jan. 18, 2017).  Under these new regulations, ALJs no longer

"weigh" medical opinions but rather determine which are most "persuasive."  20 C.F.R. §§

404.1520c(a)-(b), 416.920c(a)-(c).  To that end, controlling weight is no longer given to any

medical opinion.  *Revisions to Rules*, 82 Fed. Reg. 5844, at 5867-68; *see also* 20 C.F.R. §§

404.1520c(a), 416.920c(a).  Instead, the Commissioner evaluates the persuasiveness of all

medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant,

(4) specialization, and (5) other factors, such as "evidence showing a medical source has

familiarity with the other evidence in the claim or an understanding of our disability program's

policies and evidentiary requirements."  20 C.F.R. § 404.1520c(a), (c)(1)-(5); 20 C.F.R. §

416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most

important factors" in the evaluation process.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

"[S]upportability" means "[t]he more relevant the objective medical evidence and supporting

explanations presented by a medical source are to support his or her medical opinion(s) or prior

administrative medical finding(s), the more persuasive the medical opinions or prior

administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(1). "[C]onsistency" means "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations require the ALJ to articulate how persuasive the ALJ finds the medical opinions and to explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. § 404.1520c(a), (b); 20 C.F.R § 416.920c(a),(b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

The court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we

gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

## B.     Whether the "Specific and Legitimate" Standard Still Applies

As an initial matter, the parties disagree about whether an ALJ is still required to provide specific and legitimate reasons for discounting a contradicted opinion from a treating or examining physician. *Compare* Def. Br. 10 *with* Reply 13.  Under existing Ninth Circuit law, an ALJ must provide "clear and convincing" reasons to reject an uncontradicted opinion from a treating or examining doctor and "specific and legitimate" reasons to reject a contradicted opinion from such doctor. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).  The regulations pertaining to applications filed before March 27, 2017, set out a hierarchy for treatment of opinion evidence that, consistent with Ninth Circuit case law, gives treating sources more weight than non-treating sources, and examining sources more weight than non-examining sources.  *See Standards for Consultative Examinations and Existing Medical Evidence*, 56 Fed. Reg. 36,932, *available at* 1991 WL 142361 (Aug. 1, 1991); *Magallanes*, 881 F.2d at 751 (adopting the "clear and convincing" and "specific and legitimate" standards for rejecting treating and examining source medical opinions); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983) (holding that "[i]f the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record).

The Ninth Circuit has not yet considered whether the revision of the 2017 regulations requires re-evaluation of the "specific and legitimate" standard for review of medical opinions. *See Robert S. v. Saul*, No. 3:19-CV-01773-SB, 2021 WL 1214518, at *4 (D. Or. Mar. 3, 2021), *report and recommendation adopted*, 2021 WL 1206576 (D. Or. Mar. 29, 2021) (collecting

cases).  Nevertheless, "[e]ven under the Commissioner's new regulations, the ALJ must articulate

why he has rejected the opinion" and "the Ninth Circuit's 'specific and legitimate standard' is

merely a benchmark against which the Court evaluates that reasoning."  *Scott D. v. Comm'r Soc.*

*Sec.*, No. C20-5354 RAJ, 2021 WL 71679, at *4 (W.D. Wash. Jan. 8, 2021); *see* 20 C.F.R. §§

404.1520c(a), 416.920c(a).

    **C.**    **Analysis**

    The ALJ found persuasive Dr. Vederman's opinion that "there are no areas of underlying

cognitive deficit which are expected to impact [plaintiff's] capacity to engage in demanding,

instrumental forms of employment." Tr. 22.  The ALJ found this was "consistent" with Dr.

Vederman's examination of plaintiff, which "showed [he] had a Full Scale IQ of 124, in the high

average range," and "performed in the 'high average range' on the digit span forward test and the

'superior' range on digit span backward." *Id.*  The ALJ also noted that plaintiff's performance in

arithmetic was "very superior," his memory was "average to high-average," and his "[e]xecutive

functioning, reasoning, and abstraction were generally average to very superior." *Id.* (citing Tr.

366).

    However, the ALJ found that Dr. Vederman's "assessment that [plaintiff] was unable to

seek out and engage in work due to 'the severity of his mental health symptoms' . . . is not at all

persuasive, as illustrated by [plaintiff's] subsequent hiring at FedEx and swift promotion from

package handler to operations manager." Tr. 22.  At the time of the hearing in August 2019,

plaintiff was working as an operations manager for FedEx.  Tr. 643.  Before that, plaintiff

worked for seven months, between October and May 2017, as a package handler, a job he

described as "bruising, hard, and hazardous." Tr. 38; Tr. 643.  While plaintiff did not believe the

job was "sustainable in the long term, he hoped it would lead to better opportunities at FedEx or

"spur him to get a less physically demanding consulting job he can perform at home." *Id.*; *see also* Tr. 15 (recognizing that plaintiff began working for FedEx fulltime in October 2018); Tr. 598 (November 2018 treatment notes showing plaintiff had started a part-time job as a package handler for FedEx); Tr. 529 (April 2019 treatment notes showing plaintiff had been working as package handler for six months and was looking for work as data analyst). The ALJ properly discredited Dr. Vederman's opinion where the restrictions were inconsistent with plaintiff's work activity. *See Rollins*, 261 F.3d at 856 (holding an ALJ may discredit a doctor's opinion where the restrictions are inconsistent with the claimant's level of activity).

Thus, in evaluating Dr. Vederman's opinion, the ALJ both cited evidence that was supportive of Dr. Vederman's conclusions and that which was inconsistent with his conclusions. Moreover, the ALJ provided specific and legitimate reasons, supported by substantial evidence, to discount Dr. Vederman's opinion. For these reasons, there is no reversible error.

## III.    Lay Witness Evidence

Finally, plaintiff claims the ALJ erred by ignoring his mother's testimony. The new regulations provide that ALJs are "not required to articulate how [they] considered evidence from nonmedical sources." 20 C.F.R. §§ 404.1520c(d); 416.920c(d). Consequently, there is an argument that ALJs are no longer required to provide reasons that are germane to reject lay witness testimony. *See Wendy J.C. v. Saul*, No. 3:19-cv-01434-AC, 2020 WL 6161402, at *13 n.9 (D. Or. October 21, 2020) ("The new regulations provide the ALJ is 'not required to articulate how [they] considered evidence from nonmedical sources . . . .' 20 C.F.R. §§ 404.1520c(d) (2019), 416.920c(d). As such, the ALJ is no longer required to provide reasons germane to lay witnesses to reject their testimony.") (alterations in *Wendy J.C.*); *but see Tanya L. L. v. Comm'r Soc. Sec. Admin.*, No. 3:20-CV-00078-BR, 2021 WL 981492, at *7 (D. Or. Mar.

16, 2021) (finding that that § 404.1520c(d) "do[es] not eliminate the need for the ALJ to articulate his assessment of the lay-witness statements").

Here, the ALJ did not mention plaintiff's mother's statements in the decision. But plaintiff's mother's statements were similar to plaintiff's own subjective complaints. Thus, to the extent the ALJ gave a clear and convincing reason supported by substantial evidence to discount plaintiff's subjective complaints, and plaintiff's mother's testimony repeated plaintiff's complaints, any error by the ALJ in failing to articulate the reasons for rejecting plaintiff's mother's testimony is harmless. *See Molina*, 674 F.3d at 1122 (holding that "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," the failure to address the lay testimony may be deemed harmless).

## ORDER

The Commissioner's decision is AFFIRMED.

DATED  February 28, 2022.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

16 – OPINION AND ORDER